UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JOHN WESLEY KIMBROUGH, III,

    Plaintiff,

        v.                        CAUSE NO. 3:21-CV-512-RLM-MGG

RON NEAL,

    Defendant.

OPINION AND ORDER

John Wesley Kimbrough, III, a prisoner without a lawyer, filed a complaint and motion for preliminary injunction. ECF 1; ECF 2. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). The court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A.

Mr. Kimbrough alleges that after Correctional Officer Officer Lasko died, Warden Ron Neal implemented a policy restricting telephone access and electronic communications during shakedowns. At first, Mr. Kimbrough thought the restriction would be in place until the entire prison had been shaken down. That hasn't been the case. Telephone and electronic communication access were restricted from April 27

to April 30, 2021, at 8:00 p.m. or 9:00 p.m. Access was restricted again from June 8 to June 11 at 4:00 p.m. When Mr. Kimbrough drafted his complaint, he expected telephone access to be restricted from June 21 until June 25. Access was also restricted a fourth time between April and June, although Mr. Kimbrough doesn't know the dates. He expects access to telephone and electronic communications to be restricted one or two more weeks in the future as the shakedown of the prison is completed.

     Mr. Kimbrough has two ongoing medical concerns that have been the subject of litigation. It's important to him to be able to contact his attorneys and his aunt when he has problems getting necessary treatment for these conditions. He also needs to be able to communicate with his attorneys about other matters related to his ongoing cases. One of Mr. Kimbrough's attorneys tried to schedule a call with him to discuss a settlement in one of his civil cases on June 10 or June 11. The call was postponed until the following week. Mr. Kimbrough wanted to call his attorneys after someone in the mail room opened a piece of legal mail that contained a settlement agreement and read it, but he couldn't make that call for several days. The prison wouldn't make an exception to the rule to permit Mr. Kimbrough to communicate with the attorneys representing him in his civil cases.

     Mr. Kimbrough believes these restrictions have been put in place to punish the general prison population for Officer Lasko's death and to prevent prisoners from notifying the outside world of civil rights violations that he says are taking place. Nothing in the complaint suggests that the brief communication restrictions at issue

2

here are designed either as a punishment or to suppress communications regarding alleged civil rights violations. Mr. Kimbrough asserts that the restrictions violate his rights under the First Amendment, Fifth Amendment, and Fourteenth Amendment.

Prisoners have a First Amendment right to communicate with individuals outside the prison, but it isn't an unqualified right. *See* Thornburgh v. Abbott, 490 U.S. 401, 407 (1989); Washington v. Reno, 35 F.3d 1093, 1100 (6th Cir. 1994). Our court of appeals has expressed doubt about whether restrictions to telephone access implicate the First Amendment.

> Although the telephone *can* be used to convey communications that are protected by the First Amendment, that is not its primary use and it is extremely rare for inmates and their callers to use the telephone for this purpose. Not to allow them access to a telephone might be questionable on other grounds, but to suppose that it would infringe the First Amendment would be doctrinaire in the extreme, *United States v. Footman,* 215 F.3d 145, 155 (1st Cir. 2000), though the Ninth Circuit disagrees. *Johnson v. California*, 207 F.3d 650, 656 (9th Cir. 2000) (per curiam).

Arsberry v. Illinois, 244 F.3d 558, 564–565 (7th Cir. 2001) (emphasis in original). *See also* Boriboune v. Litsher, 91 F. App'x 498, 499 (7th Cir. 2003).

Courts that have recognized a First Amendment right to telephone access have held that it may be limited under Turner v. Safley, 482 U.S. 78, 89 (1987). *See Boriboune*, 91 Fed. Appx. at 499 (citing Johnson v. California, 207 F.3d 650, 656 (9th Cir. 2000)). In the context of the First Amendment, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987); Kaufman v. McCaughtry, 419 F.3d 678, 682–683 (7th Cir. 2005). Mr.

3

Kimbrough was denied access to telephonic and electronic communication for about four days at a time on four occasions over approximately a three-month period. He expects to be under similar restrictions once or twice more. These restrictions are in place only when portions of the prison are being shaken down. The entire prison is being shaken down in response to the death of an officer. Assuming without deciding that Mr. Kimbrough has a First Amendment right to access the telephone, the restrictions of short duration that he describes, in place only while prison shakedowns are underway in the aftermath of an officer's death, are reasonable. Mr. Kimbrough hasn't stated a claim upon which relief can be granted under the First Amendment.

The Fourteenth Amendment provides that state officials shall not "deprive any person of life, liberty, or property, without due process of law . . . ."[1] An inmate is entitled to due process protections only when a prison policy poses an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). The restrictions at issue here don't amount to an atypical or significant hardship, even in light of Mr. Kimbrough's unique circumstances and needs. *See* Hadley v. Peters, 1995 WL 675990, at *8 (7th

---

[1] Mr. Kimbrough also argues that his Due Process rights were violated under the Fifth Amendment. The Fifth Amendment is inapplicable here, because it applies only to the actions of federal officials, and Warden Neal is not a federal official. Markham v. White, 172 F.3d 486, 491 (7th Cir. 1999) ("When a case is brought against federal officials, the equal protection clause of the Fourteenth Amendment does not provide the theoretical basis of the claim. Instead, courts turn to the due process clause of the Fifth Amendment, which has been understood to incorporate equal protection principles from the time of *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954), forward."). *See also* Wrinkles v. Davis, 311 F. Supp. 2d 735, 738 (N.D. Ind. 2004)("The Fifth Amendment's due process clause applies only to acts of the federal government and does not limit actions of state officials.")

4

Cir. 1995) ("the denial of telephone privileges for ten days is not a matter of constitutional dimensions.").

Mr. Kimbrough's complaint doesn't state a claim upon which relief can be granted. His motion for preliminary injunction (ECF 2) must be denied, and the case will be dismissed. "The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." Abu-Shawish v. United States, 898 F.3d 726, 738 (7th Cir. 2018). But "courts have broad discretion to deny leave to amend where . . . the amendment would be futile." Hukic v. Aurora Loan Servs., 588 F.3d 420, 432 (7th Cir. 2009). For the reasons previously explained, that's the case here.

For these reasons, the court **DENIES** the Motion for Preliminary Injunction (ECF 2) and **DISMISSES** this case pursuant to 28 U.S.C. § 1915A.

SO ORDERED on July 20, 2021

s/ Robert L. Miller, Jr.
JUDGE
UNITED STATES DISTRICT COURT